**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **HENNY PATEL, an Individual,**<br><br>Plaintiff,<br><br>vs.<br><br>**SECURITAS SECURITY SERVICES USA, INC., CBRE, INC., and MICROSOFT CORPORATION,**<br><br>Defendants. | No. 1:26-cv-08250<br><br>Judge: Steven C. Seeger |

**DEFENDANT SECURITAS SECURITY SERVICES USA, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL INDIVIDUAL ARBITRATION AND STAY PROCEEDINGS**

Defendant Securitas Security Services, USA, Inc. ("Securitas" or "Defendant"), pursuant to the Dispute Resolution Agreement entered into by Plaintiff Henny Patel ("Patel" or "Plaintiff") and Sections 3 and 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3, 4, submits this Memorandum in Support of its Motion to Compel Individual Arbitration and Stay Proceedings, as follows:[1]

## I. INTRODUCTION

Plaintiff brings this class action complaint against Defendants Securitas, CBRE, Inc., and Microsoft Corporation in violation of her agreement to individually arbitrate claims. Plaintiff voluntarily entered into a valid Dispute Resolution Agreement ("Agreement") in connection with her employment with Securitas. The Agreement covers the BIPA claims at issue here and

[1] Defendant files this Motion in lieu of an Answer under the Federal Arbitration Act, 9 U.S.C. §§ 3, 4. As discussed herein, the Federal Arbitration Act requires a stay of the case. Only to the extent necessary, Defendant also brings this Motion under Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6).

requires that these claims be arbitrated on an individual basis.

Specifically, Plaintiff agreed to resolve through final and binding arbitration all disputes arising out of or relating to her employment that would otherwise be resolved in a court of law. Plaintiff further agreed that "there will be no right or authority for any dispute to be brought, heard or arbitrated as a class action" and "there will be no right or authority for any dispute to be brought, heard or arbitrated as a collective action." Exhibit A, Declaration of Caitlin Bruemmer ("Bruemmer Decl.") Attachment 1, Agreement § 7, p. 5. The Agreement also contains a clear delegation clause providing that disputes arising out of or relating to the interpretation or application of the Agreement, including disputes concerning its scope, enforceability, revocability, or validity, are subject to arbitration, except as otherwise expressly provided in the Agreement. *Id.* at § 2, p. 1.

Therefore, Plaintiff is precluded from pursuing her claims in court because of her written agreement to submit the claims at issue in this case to binding individual arbitration. Defendant respectfully requests that the Court compel Plaintiff's claims to individual arbitration, and stay this action pending conclusion of individual arbitration.

## II. STATEMENT OF FACTS

### 1. Securitas Is Engaged in Interstate Commerce.

Securitas provides security services throughout the United States and conducts business across state lines. Ex. A, Bruemmer Decl. ¶ 4. Securitas is headquartered in Parsippany, New Jersey and provides services throughout the United States. *Id.* ¶ 3. Securitas employs personnel in multiple states, utilizes interstate channels of communication, including telephone, email, and internet-based systems, and regularly engages in business activities affecting interstate commerce. *Id.* ¶ 4. Moreover, it provides services nationwide, communicates, purchases goods and services from vendors across state lines, and serves customers whose operations span

multiple states. *Id.* These activities constitute and affect interstate commerce within the meaning of the FAA.

### 2. Plaintiff Executes Arbitration Agreement Prior to Beginning Employment with Securitas.

Days before beginning her employment with Securitas on December 28, 2022, Plaintiff executed the Agreement, which provides for the individual arbitration of all employment-related disputes. *See* Ex. A, Bruemmer Decl. at ¶ 5, 7–13 & Attachment 1, Agreement.

After receiving an offer of employment and prior to her December 28, 2022 start date, Plaintiff was sent an email containing a unique link to access her onboarding documents, including the Agreement and Dispute Resolution Agreement Acknowledgment ("Agreement Acknowledgment"). Ex. A, Bruemmer Decl. ¶¶ 10–11 & Attachments 1 and 2. The link was sent to the email address Plaintiff used to apply for the position. *Id.* ¶ 10. Using the link, Plaintiff was presented with each onboarding document separately and had an opportunity to review and raise any questions before electronically executing them. *Id.* Plaintiff was not required to complete her onboarding documents prior to her start date and would have been given time to complete her onboarding documents after starting, had she not already done so. *Id.* ¶ 8. However, Plaintiff elected to complete her onboarding documents in advance of her start date, including executing the Agreement Acknowledgment. *Id.* ¶¶ 11–12.

The onboarding platform generated an audit trail contemporaneously documenting Plaintiff's access to and execution of her onboarding documents. *Id.* ¶ 12 & Attachment 3. The audit trail reflects that Plaintiff authenticated to the platform using her email address and subsequently electronically executed the Agreement Acknowledgment on December 24, 2022 at 02:11:52 UTC. *Id* ¶ 12. Once a document is electronically executed through the platform, it can no longer be altered. *Id.* ¶ 8. These records confirm Plaintiff's receipt of the Agreement, her

opportunity to review its terms, and her electronic execution of the accompanying acknowledgment.

**3. The Arbitration Agreement Requires Individual Arbitration of Plaintiff's BIPA Claims.**

The Agreement provides that it "is governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq." Ex. A, Attachment 1 § 2. The Agreement contains a broad provision requiring the arbitration of employment-related disputes. Specifically, under the heading "How this Agreement Applies," the Agreement provides:

> ". . . [it] is intended to apply to the resolution of disputes that otherwise would be resolved in a court of law or before a forum other than arbitration. It requires all such disputes to be resolved only by an Arbitrator through final and binding arbitration and not by way of court or jury trial."

*Id.* § 2, p. 1. The Agreement expressly covers disputes relating to privacy, employment, and state-law causes of action arising from the employment relationship:

> ". . . disputes with any entity or individual arising out of or related to the application for employment, background checks, privacy, employment relationship or the termination of that relationship . . . and all other federal or state legal claims (including without limitation torts) arising out of or relating to Employee's employment or the termination of employment."

*Id* § 2, p. 2.

Not only does the Agreement require arbitration of covered employment-related disputes,[2] but it also expressly prohibits their resolution on a class or collective basis. In a

---

[2] The Agreement contains several narrow statutory exclusions from arbitration, including certain Title VII claims and tort claims relating to sexual assault or sexual harassment where arbitration may not be required under applicable federal law, as well as claims or workers compensation, state disability insurance, and unemployment insurance. The Agreement also expressly provides that nothing therein prevents an employee from making a report to, filing a claim or charge with, or participating in proceedings before a government agency, including the National Labor Relations Board ("NLRB").

separate section, clearly titled **Class and Collective Action Waiver,** the parties agreed to arbitrate claims individually—not on a class basis:

> "There will be no right or authority for any dispute to be brought, heard or arbitrated as a class action ('Class Action Waiver')."

and

> "There will be no right or authority for any dispute to be brought, heard or arbitrated as a collective action ('Collective Action Waiver')."

Id. § 7, p. 5.

The Agreement makes clear that arbitration is not a condition of employment and affords a thirty-day opportunity to opt out of arbitration without any adverse employment consequences. Specifically, the Agreement provides:

> "Arbitration is not a mandatory condition of your employment at the Company, and therefore you may notify the Company that you wish to opt out and not be subject to this Agreement."

The Agreement Acknowledgment signed by Plaintiff confirmed that she received a copy of the Agreement, read and understood its terms, and understood that, unless she exercised her right to opt out, she and Securitas would be mutually bound by the Agreement. The Acknowledgment provides:

> "I have received a copy of the Securitas Security Services USA, Inc. (the "Company") Dispute Resolution Agreement (the "Agreement") and I have read and I understand all of the terms contained in the Agreement. I understand that, unless I opt out, employment or continued employment at the Company constitutes acceptance of this Agreement and its terms. I further acknowledge that, unless I opt out, the Company and I are mutually bound by this Agreement and its terms."

*Id.*, Attachment 2. Plaintiff did not exercise her right to opt out and instead continued her employment with Securitas until her separation on or about September 22, 2025. Ex. A, Bruemmer Decl. ¶¶ 13–14.

**4. Relevant Procedural History.**

Plaintiff Henny Patel initially filed this putative class action in the Circuit Court of Cook County, Illinois, alleging violations of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, *et seq.*, on behalf of herself and a proposed class of similarly situated individuals. Plaintiff alleges that Defendants collected, used, stored, and disclosed biometric information in the course of her employment with Securitas as a Security Officer and assignment to work at a Microsoft site at a property managed by CBRE, Inc. Codefendant Microsoft Corporation subsequently removed the action to this Court pursuant to the Class Action Fairness Act. *See* ECF No. 1, Notice of Removal.

## III. LEGAL ARGUMENT

### A. The Agreement Is Governed by the FAA.

The FAA, 9 U.S.C. § 1, et seq., was passed as "a response to hostility of American courts to the enforcement of arbitration agreements." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001). It states that arbitration agreements involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018). The FAA preempts all conflicting state laws that frustrate the purpose of the FAA. *DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 58-59 (2015); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343 (2011); *see also Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 710 (7th Cir. 2019) (FAA "mandates enforcement of valid arbitration agreements"). Further, the Supreme Court has "repeatedly held that ambiguities about the scope of an arbitration agreement must be resolved in favor of arbitration." *Lamps Plus v. Varela*, 587 U.S. 176, 189 (2019).

The FAA applies to the Agreement. The Agreement expressly states, "[t]his Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § et seq." Ex. A, Bruemmer Decl. Attachment 1,

Agreement § 2, p. 1. This statement alone brings it within the purview of the FAA.

The FAA also applies to the Agreement for the separate reason that Securitas' business activities involve interstate commerce. Ex. A, Bruemmer Decl. at ¶ 4. In applying the FAA, the United States Supreme Court is clear that the FAA is expansive and must be broadly applied. It is not limited to people or activities actually "within the flow of commerce"—instead, it covers activities that merely "affect" commerce. *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273-74 (1995); *see also Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003) (affirming broad interpretation of "involving commerce"). Securitas is headquartered in Parsippany, New Jersey and provides services throughout the United States. Ex. A, Bruemmer Decl. ¶¶ 3-4. Securitas also regularly uses interstate channels of communication, including email and interstate mail, and maintains a presence on the internet through its website where it advertises its services and advertises employment opportunities, and accepts job applications. *Id.* ¶ 4. These activities constitute "interstate commerce" under the FAA. *See e.g., Dobson*, 513 U.S. at 282 ("the multistate nature" of defendants' business operations satisfied FAA's interstate commerce requirement); *Citizens Bank*, 539 U.S. at 56-57 (finding requisite commerce for FAA coverage even when individual transaction did not have substantial effect on commerce).

### B. The Agreement Is Valid and Enforceable and Covers the Subject Matter of the Complaint.

In deciding whether to compel arbitration, courts look to two "gateway" issues: (1) whether there is an agreement to arbitrate; and (2) whether the agreement covers the dispute. *Howsam v. Dean Witter Reynolds, Inc.* 537 U.S. 79, 83-84 (2002). A court has no choice but to grant a motion to compel arbitration where there is a valid arbitration agreement and the issues are covered by the agreement. Securitas easily meets this minimal burden.

### 1. The Agreement Is Valid and Enforceable.

To determine whether Plaintiff and Securitas entered into a valid and enforceable agreement to arbitrate disputes, the Agreement must be examined under Illinois law regarding contract formation. *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944 (1995). Under Illinois law, which applies an objective standard to contract formation, a valid contract requires an offer, acceptance, mutual assent, and consideration. *Nat'l Prod. Workers Union Ins. Trust v. Cigna Corp*., 665 F.3d 897, 901 (7th Cir. 2011).

The Agreement satisfies the requirements of Illinois contract law. Mutual assent is evident from both the Agreement and Plaintiff's signed Agreement Acknowledgment. The Agreement expressly provides that, unless the employee opts out, the employee and the Company "mutually agree" to resolve covered disputes through arbitration rather than in a court of law. Ex. A, Bruemmer Decl., Attachment 1, Agreement, at § 1, p. 1. The Agreement further states that if the employee does not timely opt out, continued employment constitutes "mutual acceptance" of the Agreement's terms by both the employee and the Company. *Id.* at § 12, p. 7.

Plaintiff confirmed her assent by signing the Agreement Acknowledgment before she even began her employment with Securitas. By signing the acknowledgment, Plaintiff affirmed that she had received, read, and understood the Agreement and further acknowledged that, unless she opted out, "the Company and I are mutually bound by this Agreement and its terms." Ex. A, Bruemmer Decl., Attachment 2. Plaintiff signed the Agreement Acknowledgment electronically:

| | | | |
|---|---|---|---|
| Caitlin Bruemmer | 12/23/2022 | patel, henny | 12/24/2022 |
| Employer Representative Signature | Date | Employee Signature | Date |
| Caitlin Bruemmer | | Patel henny | |
| Employer Representative Printed Name | | Employee Printed Name | |

*Id.*

Plaintiff's electronic signature is legally effective and enforceable. Both federal and Illinois law recognize the validity of signatures in electronic form. *See* 15 U.S.C. § 7001(a); 5 ILCS 175/5-120. Plaintiff's signature, as evidenced by the Agreement Acknowledgment *and* the contemporaneous audit trail, evidence her clear and definitive acceptance of the Agreement. *Id.*, Attachments 2 and 3.

Moreover, Plaintiff did not opt out and continued her employment with Securitas until September 22, 2025. *Id.* ¶¶ 13–14. Accordingly, the undisputed evidence establishes mutual assent and a binding agreement to arbitrate between Plaintiff and Securitas.

There is also consideration. Under Illinois law, where, as here, the agreement to arbitrate is mutual, the requirement for consideration is met. *Medina v. Hisp. Broad. Corp.*, No. 01 C 2278, 2002 WL 389628, at *2 (N.D. Ill. Mar. 12, 2002) ("Illinois law regarding the mutuality of obligation – essentially, the common law principle of consideration – requires only that both parties be bound by the agreement . . . The parties' obligations need not be identical."); Ex. A, Bruemmer Decl., Attachment 1, Agreement, § 1, p. 1 ("Under the terms set forth below, and unless you choose to opt out of arbitration, both you . . . and the Company *mutually agree* and thus are required to resolve covered claims either may have against the other by Arbitration instead of in a court of law.") (Emphasis added.)

Thus, the Agreement is valid. The first gateway consideration is satisfied.

**2. The Agreement Covers Plaintiff's Claims.**

The second gateway issue, whether the Agreement covers the asserted claims, is also easily satisfied.

Here, the Agreement is broad in scope. It applies to "any dispute arising out of or related to" Plaintiff's employment with Securitas or the termination of that employment and further applies to disputes "arising out of or related to the application for employment, background checks, privacy, employment relationship or the termination of that relationship." Ex. A, Bruemmer Decl., Attachment 1, Agreement, § 2, pp. 1–2. The Agreement also expressly encompasses disputes concerning "all other federal or state legal claims (including without limitation torts) arising out of or relating to Employee's employment or the termination of employment." *Id.* § 2, p. 2.

The Complaint asserts one claim for violating BIPA arising out of Plaintiff's employment with Securitas. (ECF No. 1-1, ¶¶ 1, 12–13, 44–45). Because Plaintiff's claim indisputably relates to privacy and arises out of her employment relationship with Securitas, it falls squarely within the disputes the parties agreed to submit to binding arbitration. *See e.g., id.* at ¶ 75 (alleging, "[b]y disclosing, redisclosing, or otherwise disseminating Plaintiff's and the Class's biometric identifiers and biometric information as described herein, ***Defendants violated Plaintiff's and the Class's rights to privacy***.") (emphasis added). In addition, the Agreement broadly encompasses "all other federal or state legal claims (including without limitation torts) arising out of or relating to Employee's employment or the termination of employment." Ex. A, Attachment 1 § 2. Accordingly, because Plaintiff's BIPA claim arises out of her employment relationship and alleges violations of privacy rights under Illinois law, it falls squarely within the disputes the parties agreed to submit to arbitration.

It is Patel's burden to show there is no permissible interpretation of the Agreement that would cover this action. *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960); *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 910 (7th Cir. 1999) (holding that broad arbitration clauses necessarily create a presumption of arbitrability). She cannot do so.

Even if there were doubt about the scope of the Agreement (there is not), any such doubt must be resolved in favor of arbitration. Under the FAA, the scope of an arbitration agreement is given a liberal interpretation, with any doubts resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1034 (7th Cir. 2012). Indeed, courts must defer to arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute . . . [d]oubts should be resolved in favor of coverage." *United Steelworkers of Am.*, 363 U.S. at 582-83.

### C. Plaintiff Waived Any Right to Proceed on a Class Basis.

Plaintiff's claim must proceed on an individual basis in arbitration, and she has no right to proceed on a class basis, as she seeks to do here. The Agreement expressly prohibits Plaintiff from pursuing her claim on a class or collective action basis and requires her to submit her claims to individual arbitration:

> "**7. Class and Collective Action Waiver**
>
> [. . .]
>
> (a) There will be no right or authority for any dispute to be brought, heard or arbitrated as a class action ("Class Action Waiver"). The Class Action Waiver shall be severable from this Agreement in any case in which (1) the dispute is filed as a class action and (2) there is a final judicial determination that the Class Action Waiver is invalid, unenforceable, unconscionable, void or voidable. In such instances, the class action must be litigated in a civil court of competent jurisdiction."

Ex. A, Bruemmer Decl., Attachment 1, Agreement § 7, p. 5.

The Class Action Waiver must be enforced as written. *See Epic Sys.*, 584 U.S. at 525 (holding that class action waivers are enforceable and reinforcing a long line of precedent requiring arbitration agreements "be enforced as written"); *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) ("consistent with [the FAA's] text, courts must 'rigorously enforce' arbitration agreements according to their terms"); *Concepcion*, 563 U.S. at 344; *see also Lamps Plus*, 587 U.S. at 183. Thus, the Court should compel individual arbitration.

**D. The Court Should Stay the Claims.**

Once Plaintiff is compelled to arbitrate her claims individually, these proceedings should be stayed pending that arbitration. *See* 9 U.S.C. § 3; *Smith v. Spizzirri*, 601 U.S. 472, 477 (2024) (holding section 3 of the FAA requires that the court stay proceedings pending arbitration upon motion of a party).

## IV. CERTIFICATE OF CONFERRAL

Securitas certifies that, pursuant to this Court's requirements, its counsel provided the Agreement and Agreement Acknowledgement to Plaintiff's counsel by email and discussed the same with Plaintiff's counsel by video conference on June 30, 2026. Plaintiff's counsel advised at that time that Plaintiff did not recall signing the Agreement. However, failure to recall is insufficient to create a genuine dispute as to formation. *See, e.g.*, *Tinder v. Pinkerton Security*, 305 F.3d 728, 735-36 (plaintiff's averment that "she 'does not recall seeing or reviewing the Arbitration Program brochure'…does not raise a genuine issue of material fact"); *see also Nitka v. ERJ Dining IV, LLC*, No. 18 CV 3279, 2018 WL 5884531, at *2 (N.D. Ill. Nov. 8, 2018) ("whether [the individual] remembers executing the agreement or not is insufficient to create a genuine issue of fact").

Defendant followed up with Plaintiff's counsel by email on September 2, 2026 to provide a copy of the audit trail evidencing Plaintiff's execution of the Agreement. Plaintiff's counsel has not agreed to voluntarily move Plaintiff's claims to individual arbitration.

## V. CONCLUSION

The Agreement is enforceable, and Plaintiff's claims fall within the scope of the Agreement. Defendant respectfully requests that the Court grant its Motion, compel individual arbitration of Plaintiff's claim, and stay this case pending the resolution of the arbitration.

Dated: September 11, 2026

Respectfully submitted,

**SECURITAS SECURITY SERVICES USA, INC.**

*By: /s/ Orly Henry*
One of Its Attorneys

Orly Henry, Bar No. 6306153
ohenry@littler.com
David A. Kruger, Bar No. 6346145
dkruger@littler.com
LITTLER MENDELSON, P.C.
321 North Clark Street, Suite 1100
Chicago, IL 60654
Telephone: 312.372.5520
Facsimile: 312.372.7880

**CERTIFICATE OF SERVICE**

I, Orly Henry, an attorney, certify that on September 11, 2026, I caused a true and correct copy of the foregoing document to be filed electronically with the Clerk of the Court, using the Court's CM/ECF system, which served a copy upon the following counsel of record:

Matthew Haiduk
Mara Baltabols
Haiduk Law PC
825 W. State St., #117D
Geneva, IL 60134
matt@haiduklaw.com
mara@haiduklaw.com
*Plaintiff Attorneys*

Joseph C. Wylie II
Molly G. Baldock
Kenn Brotman
K&L Gates LLP
70 W. Madison Street, Suite 3100
Chicago, IL 60602
Joseph.Wylie@klgates.com
Molly.Baldock@klgates.com
Kenn.Brotman@klgates.com
*Defendant CBRE, Inc. Attorneys*

Elizabeth B. Herrington
Alborz Hassani
Benjamin Kabe
Morgan, Lewis & Bockius LLP
110 N. Wacker Dr., Suite 2800
Chicago, IL 60606
Beth.herrington@morganlewis.com
Al.hassani@morganlewis.com
Benjamin.kabe@morganlewis.com
*Defendant Microsoft Corporation Attorneys*

*/s/ Orly Henry*