**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HENNY PATEL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SECURITAS SECURITY SERVICES USA, INC., CBRE, INC., and MICROSOFT CORPORATION,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) | Case No.: 1:26-CV-08250<br><br>Honorable Steven C. Seeger<br>Magistrate Karyn L. Bass Ehler |

**DEFENDANT CBRE, INC.'S MOTION TO COMPEL ARBITRATION AND STAY THIS LITIGATION PENDING ARBITRATION**

Defendant CBRE, Inc. ("CBRE"), by and through its undersigned counsel, respectfully moves this Court to compel arbitration of the claims set forth in Plaintiff Henny Patel's ("Plaintiff") Class Action Complaint (the "Complaint") pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* (the "FAA"). In support of its motion, CBRE states as follows:

## I. INTRODUCTION

Plaintiff alleges that Defendants violated the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq.*, when, as part of her employment, she scanned her fingerprint to gain access to data centers in the Chicagoland area. Plaintiff alleges that she worked for Securitas Security Services USA, Inc. ("Securitas") at several data centers, and was required to scan her fingerprint to access buildings owned by Microsoft Corporation ("Microsoft"). Compl. ¶¶ 1–3, 6–7, 12. Among other things, Plaintiff broadly contends that "Defendants" collected, stored, used, and disseminated her fingerprints, which allegedly are "biometric identifiers." *Id.* at ¶ 13–14, 17.

Prior to starting her employment with Securitas, Plaintiff acknowledged and agreed to Securitas's Dispute Resolution Agreement, dated December 24, 2022 (the "Agreement"), in which she agreed (1) that any issue of arbitrability should be delegated to an arbitrator and (2) to individually arbitrate any dispute with *any* entity or individual "arising out of or related to," among other things, (a) privacy, (b) contracts, and (c) her employment. *See* ECF No. 31-1, Declaration of Caitlin Bruemmer (the "Securitas Declaration") at ¶¶ 5, 7–12. Instead of initiating an arbitration concerning her claims of violations under BIPA, Plaintiff filed this putative class action against Securitas, Microsoft, and CBRE.

The Agreement unambiguously delegates the question of arbitrability to an arbitrator. This Court should therefore compel arbitration and defer any questions of enforceability or applicability of the Agreement to an arbitrator. However, even if this Court has jurisdiction to decide issues of arbitrability, the Court must compel arbitration here. Under the FAA and long-settled case law, the Agreement is "valid, irrevocable, and enforceable," and must be enforced according to its terms. 9 U.S.C. § 2; *see also Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018). The Agreement expressly states that it covers not only claims between Plaintiff and Securitas, but also claims between Plaintiff and "any other entity or individual" falling within the scope of disputes covered by the Agreement: her claims qualify as a dispute arising out of or related to privacy, contracts, and Plaintiff's employment. This Court should therefore order Plaintiff to individually arbitrate her claims against CBRE and stay the case pending arbitration. 9 U.S.C. § 3.

## II. FACTUAL BACKGROUND

Plaintiff alleges that she was employed by Securitas to provide security services at several data center locations in Illinois. Compl. ¶¶ 1–3, 6–7. She further alleges that Microsoft owns these data centers, and CBRE manages them. *Id.* at ¶¶ 3–7. Plaintiff contends that a contractual

relationship exists between Securitas and CBRE, where CBRE issues work orders to Securitas employees. *Id.* at ¶¶ 2–3, 5–6. She also claims that "[a]t each data center, and pursuant to the CBRE work order, Plaintiff had to scan her fingerprint for door access as required by Microsoft." *Id.* at ¶ 6.

Prior to starting her employment with Securitas, Plaintiff acknowledged and agreed to arbitrate covered claims under the Agreement, rather than engaging in litigation. She also agreed that an arbitrator would decide all issues of the enforceability and validity of the Agreement. She executed the Agreement on December 24, 2022. *See* Securitas Declaration at ¶ 12; *see also* Agreement, attached to Securitas Declaration as Attachment 1 (the "Agreement"); Agreement Acknowledgement, attached to Securitas Declaration as Attachment 2 (the "Agreement Acknowledgement"). Plaintiff specifically agreed to arbitrate the following disputes:

> disputes arising out of or relating to the interpretation or application of this Agreement, including disputes over the scope, enforceability, revocability, or validity of the Agreement, or any portion of the Agreement.
>
> disputes with any entity or individual arising out of or related to the application for employment, background checks, privacy, employment relationship or the termination of that relationship (including post-employment defamation or retaliation), contracts, trade secrets, unfair competition, compensation, classification, minimum wage, seating, expense reimbursement, overtime, breaks and rest periods, retaliation, discrimination, or harassment and claims . . . state statutes or regulations addressing the same or similar subject matters, and all other federal or state legal claims (including without limitation torts) arising out of or relating to Employee's employment or the termination of employment.

Agreement at 1–2. Plaintiff also agreed to waive any right to bring a class or collective action arising out of or relating to the same categories of disputes. *Id.* at 5.

## III. LEGAL STANDARD

The FAA "applies to written arbitration provisions in any contract evidencing a transaction involving commerce, and its reach is coextensive with Congressional power to regulate under the

Commerce Clause." *Prudential Sec. Inc. v. Hornsby*, 865 F. Supp. 447, 449 (N.D. Ill. 1994) (citing 9 U.S.C. § 2; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). The Supreme Court has confirmed that Congress' Commerce Clause power "may be exercised in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice . . . subject to federal control." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56–57 (2003) (internal citation and quotations omitted). The scope of commerce includes employment contracts unless those employment contracts are the transportation employment contracts specifically excluded under 9 U.S.C. § 1. *See Cir. City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) ("any argument that arbitration agreements in employment contracts are not covered by the FAA must be premised on the language of the § 1 exclusion itself."); *see also Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 710 (7th Cir. 2019) ("The [FAA] also extends to employment contracts."). Moreover, the Agreement between Plaintiff and Securitas expressly provides that the FAA applies. Agreement at 1.

Section 4 of the FAA permits "a party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. The FAA provides that arbitration agreements generally "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* § 2. And under Section 3 of the FAA, "a party may apply to a federal court for a stay of the trial of an action 'upon any issue referable to arbitration under an agreement in writing for such arbitration.'" *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting 9 U.S.C. § 3).

The FAA espouses a general policy favoring arbitration agreements and their rigorous enforcement. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24–25. A federal court may compel arbitration where there is (1) a written agreement to arbitrate, (2) a dispute within the scope of the agreement, and (3) a refusal to arbitrate by one of the parties to the agreement. *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). If these factors are satisfied, the Court is without discretion to deny the motion and must compel arbitration. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration."). Federal courts must "rigorously . . . enforce arbitration agreements according to their terms," *Epic Sys.*, 584 U.S. at 506 (internal citation and quotations omitted), and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 298 (2010) (internal citation and quotations omitted).

Parties can also agree to delegate to an arbitrator the question of whether an agreement authorizes arbitration. *See Herrington v. Waterstone Mortg. Corp.*, 907 F.3d 502, 507 n.3 (7th Cir. 2018) ("the parties can agree to delegate to an arbitrator the question whether an agreement authorizes . . . arbitration.") (citations omitted); *see also Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024) (holding that an arbitration agreement with a delegation clause requires that an arbitrator decide all disputes under the contract, "including whether a given disagreement is arbitrable."). If an agreement contains a delegation clause that clearly and unmistakably confers such authority to an arbitrator, a court lacks authority to interpret that agreement. *See McClenon v. Postmates Inc.*, 473 F. Supp. 3d 803, 810 (N.D. Ill. 2020).

## IV. ARGUMENT

The Agreement delegates to an arbitrator the question of whether Plaintiff's claims are subject to arbitration. Because Plaintiff and Securitas agreed to arbitrate this gateway question, this Court must enforce the Agreement's delegation clause and leave to an arbitrator any disputes regarding enforceability of the Agreement or its applicability here.

Even if this Court finds that it has the authority to decide arbitrability under the Agreement at issue, it should compel arbitration of Plaintiff's BIPA claims against CBRE. The Agreement is valid and enforceable and CBRE is a third-party beneficiary of the Agreement, and Plaintiff's claims against CBRE fall directly within the scope of the Agreement. Accordingly, this Court should compel Plaintiff to arbitrate her claims against CBRE in this action and stay any further judicial proceedings.

### a. The Agreement Delegates the Issue of Arbitrability to an Arbitrator

First, Plaintiff clearly and unmistakably agreed to delegate whether an issue is subject to arbitration to an arbitrator. Where an agreement "clearly and unmistakably provide[s]" for such delegation, a court cannot decide whether an issue is arbitrable. *Herrington*, 907 F.3d at 507 n.3 (quoting *Int'l Med. Grp., Inc. v. Am. Arb. Ass'n*, 312 F.3d 833, 842 (7th Cir. 2002)). Delegation clauses that identify the validity, enforceability, revocability, or scope of an agreement as questions for the arbitrator meet the "clear and unmistakable standard." *McClenon*, 473 F. Supp. 3d at 810 (collecting cases).

The Agreement between Plaintiff and Securitas does just this: it delegates "disputes arising out of or relating to the interpretation or application of this Agreement, including disputes over the scope, enforceability, revocability, or validity of the Agreement, or any portion of the Agreement" to be resolved "only by an Arbitrator." *See* Agreement at 1. Therefore, the gateway questions of

whether the Agreement is valid and whether it applies to Plaintiff's claims against CBRE must be decided by an arbitrator. This Court should compel arbitration.

**b. Even If the Court Determines Arbitrability, It Should Compel Arbitration of Plaintiff's Claims**

However, if this Court finds that it has the authority to determine whether the Agreement is valid and whether it applies here, it should enforce the Agreement and compel arbitration of Plaintiff's claims against CBRE.

i. Plaintiff Is Bound by the Agreement

"As the Supreme Court repeatedly has emphasized, arbitration is a creature of contract." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033 (7th Cir. 2016) (citations omitted). The question of whether a valid arbitration agreement exists is no different than the question of whether a valid contract has been formed. *Id.* In Illinois, as in virtually all jurisdictions, "[f]ormation of a contract requires mutual assent," which is measured through an "objective approach." *Id.* at 1034. "Assent is assayed through the parties' 'outward expressions such as words and acts.'" *Warner v. Real ID, Inc.*, 819 F. Supp. 3d 931, 934 (N.D. Ill. 2026) (quoting *Bank Comput. Network Corp. v. Cont'l Ill. Nat. Bank & Tr. Co. of Chicago*, 110 Ill. App. 3d 492, 497 (1st Dist. 1982)). One of the most obvious objective manifestations of assent is signature of a written contract. *See Gilbert v. I.C. Sys., Inc.*, No. 19-CV-4988, 2021 WL 292852, at *7 (N.D. Ill. Jan. 28, 2021) ("Generally, one of the acts forming the execution of a written contract is its signing . . . .") (citation omitted).

Plaintiff assented to the Agreement. On December 24, 2024, Plaintiff executed an acknowledgement that she "received," "read," and "underst[oo]d" the terms of the Agreement and understood that her continued employment at Securitas constituted acceptance of the Agreement and its terms. *See* Agreement Acknowledgement; *see also* Securitas Declaration at ¶¶ 8, 11–12.

Plaintiff agreed to and is bound by the Agreement. *See Adams*, 532 U.S. at 105; *see also Gupta*, 934 F.3d at 710 (7th Cir. 2019) ("The [FAA] also extends to employment contracts.").

ii. CBRE Is a Third-Party Beneficiary of the Arbitration Agreement

CBRE can enforce the Agreement and compel arbitration because it is an intended beneficiary of the Agreement. Non-signatories are permitted to enforce arbitration agreements, just as they are any other contracts, under at least three theories: "third-party beneficiary, agency, and equitable estoppel." *Sosa v. Onfido, Inc.*, 8 F.4th 631, 634 (7th Cir. 2021); *see also Johnson v. Mitek Sys., Inc.*, 55 F.4th 1122, 1124 (7th Cir. 2022) ("The [FAA] requires arbitration agreements to be treated just like other contracts."). "An intended third-party beneficiary is entitled to enforce contract terms when 'the liability of a promisor to the beneficiary . . . affirmatively appear[s] from the language of the instrument.'" *Brown v. Worldpac, Inc.*, No. 17 CV 6396, 2018 WL 656082, at *3 (N.D. Ill. Feb. 1, 2018) (citation omitted). But it is "not necessary that the beneficiary be identified by name in the contract," so long as it is "identified in some manner, for example, by describing the class to which it belongs." *Id.* (citations omitted). Agreements identifying a class of third-party beneficiaries as entities or individuals with whom plaintiffs are engaged in a dispute arising out of or related to certain topics have been held to sufficiently identify third-party beneficiaries. *See Kashkeesh v. Microsoft Corp.*, 679 F. Supp. 3d 731, 735 (N.D. Ill. 2023) (holding arbitration agreement sufficiently identified a class to which the defendant belonged because defendant was an entity, engaged with plaintiffs in a dispute arising out of or related to the application for/use of an account on co-defendant's platform); *see also Porter v. Sedgwick Claims Mgmt. Servs., Inc.*, No. 3:25-cv-2011, 2025 WL 1984269, at *9–11 (C.D. Ill. July 17, 2025) (holding employment arbitration agreement sufficiently identified a class to which the defendant belonged because it could be classified as a "client" under the agreement).

CBRE falls within the class of third parties designated in the Agreement between Securitas and Plaintiff. The Agreement expressly designates that it applies without limitation to disputes "*with any entity or individual* arising out of or related to . . . ." specified topics. *See* Agreement at 2 (emphasis added). As in *Kashkeesh*, this Agreement sufficiently identifies a class of third-party beneficiaries, to which CBRE belongs. CBRE is clearly "any entity"—i.e., an entity other than Securitas. The dispute arises out of or is related to at least three of the designated topics: privacy, contracts, and Plaintiff's employment. *See* Section IV.b.iii, *infra*.

The Supreme Court has explained that the FAA requires courts to "enforce arbitration contracts according to their terms." *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67 (2019) (citation omitted). For the Court to "enforce [the Agreement] according to [its] terms," it must allow not just Securitas, but also other entities or individuals, to compel arbitration of any dispute falling within the Agreement's scope, even when those entities or individuals are not themselves parties to the Agreement. The Agreement anticipates and describes the class to which CBRE belongs—making CBRE an intended third-party beneficiary of the Agreement. CBRE is entitled to enforce Plaintiff's promise to arbitrate under the Agreement.

iii. <u>Plaintiff's BIPA Claims Against CBRE Fall Squarely Within the Scope of the Arbitration Agreement</u>

Courts read "arising out of or related to" language "quite broadly to include all manner of claims," even those only "tangentially related to the agreement." *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 639 (7th Cir. 2002). No such expansive reading is required because Plaintiff's claims in this action fall squarely within the following categories: "disputes *with any entity or individual* arising out of or related to . . . . privacy . . . contracts . . . and all other federal or state legal claims (including without limitation torts) arising out of or relating to [Plaintiff]'s employment." *See* Agreement at 2.

Plaintiff alleges that as part of her employment with Securitas, CBRE collected, stored, used, and disseminated her fingerprints in violation of BIPA. Compl. at ¶¶ 13–14, 17. Plaintiff describes BIPA as enacting her "statutorily protected privacy rights" (*id.* at ¶ 18) and alleges that "Defendants" violated her right to privacy in her biometric information. *Id.* at ¶¶ 18, 74–76. Plaintiff's claims clearly arise out of or relate to privacy.

Plaintiff also contends that CBRE issued work orders pursuant to its relationship with Securitas. *Id.* at ¶¶ 2–3, 5–6. Such allegations are premised upon the existence of a contractual relationship between CBRE and Securitas, such that Securitas fulfilled its obligations by assigning Plaintiff to work at the facilities managed by CBRE and owned by Microsoft. Plaintiff has sued CBRE, Microsoft, and Securitas as a result of their alleged collection of her biometric information, which was supposedly required by CBRE's work orders. Therefore, Plaintiff's dispute also arises out of or relates to contracts. *Id.* at ¶¶ 1, 3, 5–6.

Plaintiff also claims that the scan of her fingerprints was required for her to access her job site. *Id.* Plaintiff's dispute, then, necessarily arises out of or relates to her "employment or the termination of employment." *See* Agreement at p. 2.

Plaintiff's BIPA claims against CBRE fall directly within each and every one of these categories. Plaintiff should be compelled to arbitrate all BIPA claims she asserts against CBRE. "[U]ntil such arbitration has been had in accordance with the terms of the agreement," this Court should stay this action. 9 U.S.C. § 3.

## V. CERTIFICATE OF CONFERRAL

Pursuant to this Court's requirements, on September 11, 2026, the undersigned counsel attempted to consult with counsel for Plaintiff via email on whether Plaintiff opposes this Motion. At the time of filing this Motion, counsel for CBRE has not received Plaintiff's position on this Motion.

## VI. CONCLUSION

This Court should order Plaintiff to submit her claims against CBRE to binding arbitration on an individual basis and stay this action pending arbitration of Plaintiff's claims.

Dated: September 11, 2026

Respectfully submitted,

CBRE, INC.

By: */s/ Joseph C. Wylie II*
One of its attorneys

Joseph C. Wylie II
Kenn Brotman
Molly G. Baldock
K&L GATES LLP
70 W. Madison Street, Ste. 3100
Chicago, Illinois 60602
Telephone: (312) 372-1121
Facsimile: (312) 827-8000
joseph.wylie@klgates.com
kenn.brotman@klgates.com
molly.baldock@klgates.com