**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| HENNY PATEL, individually and on behalf of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>SECURITAS SECURITY SERVICES USA, INC., CBRE, INC., and MICROSOFT CORPORATION,<br><br>Defendants. | Case No. 1:26-cv-08250<br><br>Honorable Steven C. Seeger |

**MEMORANDUM OF LAW IN SUPPORT OF MICROSOFT CORPORATION'S MOTION TO COMPEL ARBITRATION AND STAY CLAIMS**

## I. INTRODUCTION

Plaintiff Henny Patel alleges that, while employed by Securitas Security Services USA, Inc., she worked at Microsoft Corporation's data centers in the Chicago area pursuant to work orders issued by CBRE, Inc., and was required to scan her fingerprint as a security measure before entering those facilities. Based on those allegations, Plaintiff asserts putative class claims against Securitas, Microsoft, and CBRE under the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1 *et seq*. Those claims, however, belong in individual arbitration—not in a putative class action in this Court.

Plaintiff's Complaint omits a dispositive fact: in December 2022, she read and agreed to be bound by Securitas's Dispute Resolution Agreement (the "Arbitration Agreement"). In that Agreement, Plaintiff promised to individually arbitrate disputes "arising out of or related to . . . employment with Securitas." Critically, the Agreement is not limited to disputes between Plaintiff

and Securitas. It expressly encompasses "disputes with any entity or individual arising out of or related to the application for employment, background checks, privacy," as well as "all other federal or state legal claims" arising out of or relating to Plaintiff's employment.

Plaintiff's claims against Microsoft fall squarely within those terms. Her entire theory of liability arises from a security procedure she allegedly encountered while performing her job for Securitas at the Microsoft facilities to which Securitas assigned her. And her claims concern precisely the subject expressly identified in the Arbitration Agreement, which is "privacy." The Agreement thus does not merely contain a generic arbitration provision that Microsoft, as a non-signatory, seeks to invoke. It expressly requires Plaintiff to arbitrate employment-related privacy disputes with "any entity or individual."

Indeed, Judge Shah enforced materially similar language in *Kashkeesh v. Microsoft Corp.*, 679 F. Supp. 3d 731, 735-36 (N.D. Ill. 2023). There, as here, Microsoft was not a signatory to the plaintiffs' arbitration agreements and was not identified by name. Yet the court held that Microsoft could enforce the agreements as a third-party beneficiary because they defined a sufficiently definite class of entities entitled to invoke arbitration. *Id.* The same reasoning applies here—and with particular force given the Arbitration Agreement's express coverage of disputes with "any entity or individual" arising from Plaintiff's employment.

The Federal Arbitration Act requires enforcement of that bargain according to its terms. 9 U.S.C. § 2; *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505 (2018). Because Plaintiff agreed to individually arbitrate the very type of employment-related privacy dispute she now asserts against Microsoft, the Court should compel her claims against Microsoft to individual arbitration and stay those claims pending completion of the arbitration. 9 U.S.C. § 3; *Kashkeesh*, 679 F. Supp. 3d at 735-36.

## II. RELEVANT FACTUAL BACKGROUND

Plaintiff is an Illinois citizen and former Securitas employee, who worked and responded to CBRE work orders at various Microsoft data centers in the Chicago area. Compl. ¶¶ 3, 20. Securitas provides all employees with the Arbitration Agreement, which states in the first paragraph that it is an **"**arbitration agreement governed by the Federal Arbitration Act." *See* ECF No. 31-1**,** Declaration of Caitlin Bruemmer, Attachment 1 § 1. The Arbitration Agreement further provides, in part:

> Except as it otherwise provides, this Agreement applies, without limitation, to disputes with ***any entity or individual*** arising out of or related to the application for employment, background checks, privacy…and all other federal or state legal claims…arising out of or relating to Employee's employment or the termination of employment."

*Id.* at Attachment 1 § 2 (emphasis added). The Arbitration Agreement also contains the following Class and Collective Action Waiver clause which states, in part:

> (a) There will be no right or authority for any dispute to be brought, heard or arbitrated as a class action ("Class Action Waiver"). The Class Action Waiver shall be severable from this Agreement in any case in which (1) the dispute is filed as a class action and (2) there is a final judicial determination that the Class Action Waiver is invalid, unenforceable, unconscionable, void or voidable. In such instances, the class action must be litigated in a civil court of competent jurisdiction.

*Id.* at Attachment 1 § 7.

The Arbitration Agreement permits an employee to opt out by calling a toll-free number within 30 days after receiving the agreement. *Id.* at Attachment 1 § 12. Rather than seeking to opt out of the Arbitration Agreement, on December 24, 2022, Plaintiff provided Securitas with an executed Dispute Resolution Agreement Acknowledgement ("2022 Acknowledgement"), which states:

> I have received a copy of the Securitas Security Services USA, Inc. (the "Company") Dispute Resolution Agreement (the "Agreement") and I have read and I understand all of the terms contained in the Agreement. I understand that, unless I opt out, employment or continued employment at the Company constitutes

> acceptance of this Agreement and its terms. I further acknowledge that, unless I opt out, the Company and I are mutually bound by this Agreement and its terms.

*Id.* at Attachment 2. Plaintiff digitally executed the 2022 Acknowledgement, and she continued to be an employee of Securitas through the expiration of the 30-day opt-out period, and into 2025. *Id.*; Compl. ¶ 1.

## III. LEGAL STANDARD

Section 4 of the Federal Arbitration Act ("FAA") permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." 9 U.S.C. § 4. The FAA provides that arbitration agreements generally "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* § 2. And it states the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." *Id.* § 3. Federal courts must "rigorously . . . enforce arbitration agreements according to their terms." *Epic Sys.*, 584 U.S. at 505, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 298 (2010).

## IV. ARGUMENT

Under the FAA, Plaintiff must individually arbitrate her claims against Microsoft in this action. First, the Arbitration Agreement is valid and enforceable. *See infra* Part IV.B. Second, Microsoft is a third-party beneficiary of, and therefore entitled to enforce, the Arbitration Agreement. *See infra* Part IV.C. Third, Plaintiff's claims against Microsoft fall squarely within the scope of the Arbitration Agreement. *See infra* Part IV.D. Accordingly, this Court should compel

Plaintiff to individually arbitrate her claims and should stay any and all further judicial proceedings pending such individual arbitration.

### A. The FAA Reflects a Strong Federal Policy in Favor of Arbitration and Requires Enforcing Arbitration Agreements According to Their Terms.

Under the FAA, written agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Congress passed the FAA "in response to widespread judicial hostility to arbitration." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 232 (2013). It "directed courts to abandon their hostility and instead treat arbitration agreements as 'valid, irrevocable, and enforceable." *Epic Sys.,* 584 U.S. at 505 (quoting 9 U.S.C. § 2). The FAA thus "requires courts 'rigorously' to 'enforce arbitration agreements according to their terms, including terms that specify with whom the parties choose to arbitrate their disputes and the rules under which that arbitration will be conducted." *Id.* at 506 (quoting, with modification, *Am. Express*, 570 U.S. at 233); *see also Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67 (2019). "The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceeding." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011); *see also Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 185 (2019) ("benefits of private dispute resolution [include] lower costs, greater efficiency and speed, and the ability to choose expert adjudicators to resolve specialized disputes" (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 685 (2010)). If a court compels arbitration and the requesting party seeks a stay, the FAA requires the court to stay the litigation to allow arbitration to take place. 9 U.S.C. § 3.

The FAA is mandatory and does not allow courts to delve into policy considerations regarding arbitration. It "leaves no room for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which

an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd,* 470 U.S. 213, 213 (1985) (emphasis omitted). As the Supreme Court has repeatedly emphasized, this "national policy favoring arbitration" supersedes "state [law] attempts to undercut the enforceability of arbitration agreements." *Preston v. Ferrer*, 552 U.S. 346, 353 (2008); *see also DIRECTV, Inc. v. Imburgia*, 577 U.S. 47, 58 (2015) (invalidating California Court of Appeal's interpretation of arbitration clause that would "not place arbitration contracts 'on equal footing with all other contracts.'"). In particular, plaintiffs may not avoid an arbitration agreement simply because it contains a class action waiver. *Concepcion*, 563 U.S. at 352. Although Illinois law supplies the applicable contract formation principles here, federal law under the FAA governs arbitration issues. *See Faulkenberg v. CB Tax Franchise Sys.*, 637 F.3d 891, 808-09 (7th Cir. 2011).

The FAA governs this dispute because the Arbitration Agreement expressly provides that it is governed by the FAA, *see* ECF No. 31-1, Attachment 1 § 2 ("This Arbitration Provision is a contract governed by the Federal Arbitration Act . . . ."); the Arbitration Agreement incontestably falls within the FAA's requirement that it be a "contract evidencing a transaction involving commerce," *see id.* (the "Arbitration Provision . . . evidences a transaction involving commerce"); and no exception applies. Thus, in deciding Microsoft's instant motion, the Court must limit its review to two issues: (1) "whether a valid arbitration agreement exists," and (2) "whether the[] agreement covers a particular controversy." *Henry Schein*, 586 U.S. 63, 68-69.

**B. The Arbitration Agreement Binds Plaintiff, Because She Assented to its Terms, Forming a Contract Under Applicable State Law.**

"As the Supreme Court repeatedly has emphasized, arbitration is a creature of contract." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033 (7th Cir. 2016). The question whether a valid arbitration agreement exists is thus no different than the question whether a valid contract has been formed. *See id.* In Illinois, as in "virtually all jurisdictions," "[f]ormation of a contract requires

mutual assent," which is measured through an "objective approach." *Id.* at 1034. Mutual assent is determined from the parties' objective words and conduct. *Id*. An employee may accept an arbitration agreement by failing to exercise a clearly disclosed opt-out right when the employee receives a clear offer, a reasonable opportunity to opt out, and notice that employment or continued employment will constitute acceptance. *Gupta v. Morgan Stanley Smith Barney, LLC*, 934 F.3d 705, 714 (7th Cir. 2019) (citing *Ragan v. AT&T Corp.*, 824 N.E.2d 1183, 1188-89 (Ill. App. Ct. 2005)); *see also Biermann v. Comcast Cable Commc'ns Mgmt., LLC*, No. 20-cv-2986, 2020 WL 6870824, at *3 (N.D. Ill. Nov. 23, 2020) (holding that a plaintiff's "silence after he was given a reasonable opportunity to opt out, along with his continued employment, amounted to acceptance of the agreement to arbitrate).

Here, Plaintiff assented much more directly than by silence alone. Plaintiff digitally signed the 2022 Acknowledgement, confirming: "I have received a copy of [Securitas'] Dispute Resolution Agreement (the "Agreement") and I have read and I understand all of the terms contained in the Agreement" and "unless I opt out, the Company and I are mutually bound by the [Arbitration Agreement] and its terms." *See* ECF No. 31-1, Attachment 2. The Arbitration Agreement then provided a 30-day opt-out procedure. *Id*. at Attachment 1 § 12. Securitas' records reflect that Plaintiff did not exercise that right. *Id.* at ¶ 13. Plaintiff is bound by the terms of the Arbitration Agreement, even if she claims to not recall reading the Arbitration Agreement or signing the 2022 Acknowledgement. *See DeJohn v. The TV Corp. Int'l*, 245 F. Supp. 2d 913, 919 (N.D. Ill. 2003) (finding contract terms enforceable when plaintiff had the opportunity to click on linked terms and "failure to read a contract is not a get out of jail free card").

These objective acts establish acceptance of the Arbitration Agreement. Plaintiff acknowledged receipt and understanding of the agreement, received an opportunity to reject it, and did not opt out. The Court should enforce the Agreement according to its terms.

### C. Microsoft Is a Third-Party Beneficiary of, and Therefore Can Enforce, the Arbitration Agreement.

As noted above, the Arbitration Agreement expressly states that it "applies, without limitation, to disputes with ***any entity*** or individual arising out of or related to the application for employment, background checks, privacy…and all other federal or state legal claims (including without limitation torts) arising out of or relating to Employee's employment." ECF No. 31-1, Attachment 1 § 2 (emphasis added). The Supreme Court has explained that the FAA requires courts to "enforce arbitration contracts according to their terms." *Henry Schein*, 586 U.S. at 67. And so here, for the Court to "enforce [the Arbitration Agreement] according to its terms," it must allow not just Securitas, but also other entities, to compel arbitration of any dispute falling within the Arbitration Agreement's scope, even when those entities are not themselves parties to the Arbitration Agreement. That is because Illinois law nevertheless permits enforcement by an intended third-party beneficiary. *Brown v. Worldpac, Inc.*, No. 17-cv-6396, 2018 WL 656082, at *2 (N.D. Ill. Feb. 1, 2018). And here Microsoft qualifies as a third-party beneficiary of the Arbitration Agreement.[1]

[1] Although the Arbitration Agreement has a delegation clause—requiring "disputes arising out of or relating to the interpretation or application of this Agreement, including disputes over the scope, enforceability, revocability, or validity of the Agreement, or any portion of the Agreement" to be submitted to the arbitrator (ECF No. 31-1, Attachment 1 § 2)—courts treat the question of whether an entity is a third-party beneficiary as one of contract formation, which is (notwithstanding a delegation clause) to be decided by a court. *See O'Connor v. Ford Motor Co.*, No. 19-cv-5045, 2023 WL 130522, at *5-6 (N.D. Ill. Jan. 9, 2023). Of course, if the Court disagrees that the third-party beneficiary issue is properly decided by the Court, then it should compel the parties to arbitrate any dispute over Microsoft's third-party beneficiary status because the Arbitration Agreement and delegation clause are valid and enforceable.

For a non-signatory to qualify as a third-party beneficiary under Illinois law, the language of the contract must confer a direct, not merely incidental, benefit and must identify the beneficiary either by name or by a description of a class to which the beneficiary belongs. *Kashkeesh*, 679 F. Supp. 3d at 735; *Brown*, 2018 WL 656082, at *3 ("It is not necessary that that the beneficiary be identified by name in the contract, but it must be identified in some manner, for example, by describing the class to which it belongs."). Accordingly, courts applying Illinois law have held, for example, that if an agreement requires arbitration of any claim against a "client" or a "national association," then any person or entity that falls into either category may enforce the arbitration agreement. *See, e.g.*, *Smith v. Bank of Am., N.A.*, No. 17-cv-00286, 2019 WL 11910946, at *2 (N.D. Ill. May 15, 2019); *ChampionsWorld, LLC v. U.S. Soccer Fed'n*, 487 F. Supp. 2d 980, 988 (N.D. Ill. 2007); *see also Thompson v. Sutherland Global Servs., Inc.*, No. 17-cv-3607, 2019 WL 1470238, at *5 (N.D. Ill. Apr. 3, 2019) (holding that defendant was an "affiliate" per the arbitration agreement and therefore a third-party beneficiary). Relatedly, an Illinois state court held that a non-signatory nursing home owner could compel arbitration as a third-party beneficiary where the agreement permitted "any person" allegedly liable for the acts of the nursing home to demand arbitration, defining "parties" to include "any person 'against whom' a claim is asserted by or on behalf of a patient." *Long v. The Loft Rehabilitation & Nursing of Canton, LLC*, No. 4-22-0649, 2022 WL 18011945 (Ill. App. Ct. Dec. 30, 2022).

Here, Microsoft falls within a class of non-signatories identified in the Arbitration Agreement as being able to demand arbitration. The Arbitration Agreement requires arbitration of any claim against Securitas or "any entity" "arising out of or related to" (among other things): (1) Plaintiff's privacy; or (2) "all other federal or state legal claims (including without limitation torts) arising out of or relating to" Plaintiff's employment. ECF No. 31-1, Attachment 1 § 2. Microsoft

is obviously an "other entity"—i.e., an entity other than Securitas—so the Arbitration Agreement's first requirement is easily satisfied.

Microsoft's third-party-beneficiary status thus turns on whether the claims asserted here "aris[e] out of or relate[] to" any of the subject matters enumerated above. Courts read that "expansive" language (i.e., "arising out of or relate[] to") "quite broadly to include all manner of claims," even those only "tangentially related to the agreement." *Welborn Clinic v. MedQuist, Inc.*, 301 F.3d 634, 639 (7th Cir. 2002). Here, however, no such expansive reading is even required, for under any reading of the enumerated subject matters—Plaintiff's "application for employment, background checks, privacy," and "all other federal or state legal claims" arising out of or relating to Plaintiff's employment—Plaintiff's claims in this action fall squarely within each of them. *First*, as Plaintiff's own allegations make clear, her claims (at the very least) relate to her privacy and the privacy of her biometric data. Compl. ¶ 18 ("Defendants disregarded individuals' statutorily protected ***privacy rights*** . . . .") (emphasis added); ECF No. 31-1, Attachment 1 § 2. Plaintiff alleges that Defendants violated BIPA by requiring a fingerprint scan as a condition of entry to Microsoft data centers. Compl. ¶ 3 (alleging violations of the Illinois Biometric Information ***Privacy*** Act); *see also id.* at Compl. at ¶ 36 ("Defendants use and supply employee tracking system that requires employees to use their fingerprints for door access."). *Second,* Plaintiff's BIPA claims are "state legal claims" arising out of or relating to her employment. *See* ECF No. 31-1, Attachment 1 § 2. More specifically, BIPA is an Illinois state statute, and Plaintiff's claim arises from the fingerprint scan she allegedly encountered while working as a Securitas employee at Microsoft facilities pursuant to CBRE work orders. Compl. ¶ 3.

Directly on point is Judge Shah's decision in *Kashkeesh*, 679 F. Supp. 3d at 735-36, which held that Microsoft could enforce Uber drivers' arbitration agreements as a third-party beneficiary.

The agreement did not identify Microsoft by name. Instead, it extended to a defined class of third parties—an "entity" with whom the plaintiffs had a dispute "arising out of or relating to [their] application for and use of an account to use [Uber's] Platform and Driver App as a driver." *Id.* at 735. The plaintiffs argued that this language failed to identify a sufficiently definite class to demonstrate an intent to benefit Microsoft. *Id.* Judge Shah rejected that argument. The class was sufficiently definite because it was limited in two independent respects: "(1) only those entities with whom plaintiffs are engaged in a dispute and (2) only a particular subject—plaintiffs' use of Uber's platform and driver app as a driver." *Id.* Thus, although Microsoft was nowhere named in the agreement, it could enforce the arbitration provision because it fell within the specifically defined class of intended beneficiaries. *Id.* at 735-36.

Here, the Arbitration Agreement likewise defines the covered class through specific limitations to a defined list of claims. *See* ECF No. 31-1, Attachment 1 § 2. Under *Kashkeesh*, that is sufficient; the agreement need not identify each intended beneficiary by name where it instead identifies a definite class whose members can be determined from the terms of the agreement. Microsoft thus squarely falls within a class expressly identified in the Arbitration Agreement as being intended to be protected by that Agreement. It therefore qualifies as a third-party beneficiary of the Arbitration Agreement and is entitled to enforce that Agreement here.

**D. Plaintiff's BIPA Claims Fall Within the Scope of the Arbitration Agreement.**

The Arbitration Agreement also clearly covers Plaintiff's BIPA claims, which are covered specifically as enumerated claims related to "employment," and "privacy," and otherwise covered by the catchall relating to state claims related to Plaintiff's employment. *See* Compl. ¶ 3 ("Microsoft hosts data centers…where Plaintiff ***worked***…") (emphasis added); *id.* ¶¶ 45-46 ("Defendants mutually benefited from the use of a fingerprint for ***employee*** door access" and "collected Plaintiff's fingerprint data…") (emphasis added); *id.* ¶ 18 ("Defendants disregarded

individuals' statutorily protected privacy rights . . . ."); *see also supra* Part IV.C (explaining why Plaintiff's claims are privacy claims); *see also Kashkeesh*, 679 F. Supp. 3d at 735-36 (finding that plaintiffs' BIPA claims fell under their contracts with Uber as drivers); *cf. Ronquillo v. Doctor's Assoc., LLC*, 597 F. Supp. 3d 1227, 1232 (N.D. Ill. 2022) (holding that a party's BIPA claims arising out of her employment with defendant-employer does not prevent plaintiff from asserting BIPA claims against third-party timekeeping vendors used in connection with plaintiff's employment).

### E. The Court Should Stay Plaintiff's Claims Against Microsoft Pending Arbitration.

Section 3 of the FAA provides that, when an issue is referable to arbitration under a written agreement and a party requests a stay, the court "shall" stay the proceeding until arbitration has been completed in accordance with the agreement. 9 U.S.C. § 3. The Supreme Court has held that this language leaves a district court no discretion to dismiss rather than stay an arbitrable dispute when a party requests a stay. *Dean Witter Reynolds Inc.*, 470 U.S. at 218. The Court should therefore stay Plaintiff's claims against Microsoft pending completion of the individual arbitration.

## V. CONCLUSION

This Court should order Plaintiff to submit her claims to binding arbitration on an individual basis and stay this action pending individual arbitration of each Plaintiff's claims.

Dated: September 11, 2026

Respectfully submitted,

**MORGAN, LEWIS & BOCKIUS LLP**

By: *<u>/s/ Elizabeth B. Herrington</u>*
Elizabeth B. Herrington
Alborz Hassani
110 North Wacker Drive, Suite 2800
Chicago, IL 60606-1511
Telephone: (312) 324-1445
Facsimile: (312) 324-1001
beth.herrington@morganlewis.com
al.hassani@morganlewis.com

*Counsel for Defendant Microsoft Corporation*